lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BRENDA HELMERICHS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 06-2189-JAR** |
| | ) | |
| **JOHN E. POTTER, POSTMASTER** | ) | |
| **GENERAL UNITED STATES** | ) | |
| **POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

Plaintiff Brenda Helmerichs alleges that defendant John E. Potter, Postmaster General of

the United States Postal Service ("USPS"), discriminated against her based on her gender and

retaliated against her for reporting the alleged discrimination, both in violation of Title VII of the

Civil Rights Act of 1964 ("Title VII"), 24 U.S.C. § 2000e *et seq*.  This matter comes before the

Court on defendant's Motion to Dismiss for Lack of Jurisdiction, or, in the Alternative, for

Summary Judgment (Doc. 35).  For the reasons explained in detail below, the Court denies

defendant's motion to dismiss as moot and grants defendant's motion for summary judgment.

### I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no

genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."[1]

---

[1]Fed. R. Civ. P. 56(c).

In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[3]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[5]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.[6]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[8]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a

---

[2]*Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002).

[3]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)).

[4]*Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[5]*Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)).

[6]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

[7]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[8]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

rational trier of fact could find for the nonmovant."[9]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[10]  Rule 56(e) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[11]  The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[12]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[13]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[14]

## II.    Statement of Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or taken in the light most favorable to plaintiff.  In the summer of 2004, plaintiff, who is female, was employed with the USPS as a Postmaster EAS, level 13, in Waterville, Kansas.  She was promoted to that position in 2001 by Samuel Gonzales, her supervisor.  Gonzales held the position of Manager Post Office

---

[9]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197-98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671).

[10]*Adams,* 233 F.3d at 1246.

[11]Fed. R. Civ. P. 56(e).

[12]*Id.*; *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[13]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[14]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

Operations, EAS 23, Tour 2, at the Topeka, Kansas, Main Office.

There are several different levels of Postmaster positions within the USPS. Classification is determined by the size of the area covered and the volume of mail handled at each location. Each level or EAS rating number that is assigned to a Postmaster position reflects the difficulty of that particular position. Individual Postmaster positions that are assigned the same EAS number are considered lateral positions because the duties, responsibilities, benefits, and level of pay are substantially similar. Thus, an EAS-13 Postmaster position in one office would be quite similar to an EAS-13 Postmaster position in another office.

On or about June 2, 2004, the USPS issued a Vacancy Announcement for another Postmaster EAS level 13 position in Odell, Nebraska (the "Odell Position"). Eight candidates applied for the Odell Position, including plaintiff. Since both the Waterville and Odell Positions were level 13 positions, the duties, responsibilities, benefits, and level of pay offered in the two positions were substantially similar. Plaintiff concedes that she was not applying for a higher position. A review committee recommended four out of the eight applicants for an interview. All four candidates, including plaintiff, were female.

Meanwhile, on June 3, 2004, plaintiff interviewed with Gonzales for the position of Postmaster at the Baileyville office, which is a level 11 office. Although the Baileyville position was at a lower level, plaintiff told Gonzales that she was applying because it was a shorter commute and, because of her health problems, would reduce the stress of driving to work. Plaintiff informed Gonzales at that time that she was also applying for the Odell Position, as the deadline to apply would close before she knew if she got the job at Baileyville. Plaintiff did not get the Baileyville position.

4

In July 2004, Gonzales called plaintiff about a letter that had been returned.  Gonzales told plaintiff that they had discussed this before and he had told her not to send any mail back. Plaintiff disputed that she had sent any mail back, then called the customer to investigate the matter.  Plaintiff then called Gonzales to report that the reason the letter had been returned was because the forwarding order had expired.  Gonzales became upset with plaintiff and told her that people in Waterville perceived her as "a mean and awful person, and that the only way she could change that perception was to kill them with kindness."  Plaintiff responded that she would do that.

James Nelson, Manager Post Office Operations for the 683-684 zip code area, was based in Lincoln, Nebraska, and was assigned to conduct the interviews and to act as the selecting officer for the Odell Position.  As stated in the Vacancy Announcement, a job requirement for the Odell Position is to maintain good "customer and community relations."  As Postmaster, the applicant was expected to be able to establish and maintain effective work relationships with clients and customers.  In addition to the foregoing requirements, Nelson based his selection decision on merit, including which applicant had the best knowledge, skills, and abilities.  He also based his decision on his knowledge of the applicant's work performance.  If he was selecting for a position in a work area outside his own and was unfamiliar with an applicant, he would call that applicant's supervisor for input.

In the course of evaluating the applicants for the Odell Position, Nelson called Gonzales and asked for his recommendation about plaintiff.  Gonzales responded that he could not give plaintiff a positive recommendation.  He told Nelson that plaintiff had problems dealing with customers in the past and he could not recommend her for the Odell Position until she

successfully handled the problems in her own office.

During the interview process, Nelson noted that applicant Alice Phillips provided a better analysis of questions related to finance and customer relations than the other applicants. Phillips also had better human relation and analytical skills. Plaintiff did not answer the finance and customer relations questions or analyze the financial reports as well as Phillips. And, she did not receive a favorable recommendation from Gonzales in the area of customer service.

Nelson ultimately selected Phillips for the Odell Position. Nelson testified that plaintiff's gender was not a factor in his decision to select Phillips, a female, over plaintiff, who is also female. Nelson stated that his receipt of a negative recommendation from Gonzales regarding plaintiff's communication with customers was a factor, but not the only factor, in her nonselection. In the past, Nelson has decided against both male and female applicants, at least in part, based upon the recommendation from their supervisors.

After plaintiff's nonselection for the Odell Position she continued to hold a level 13 Postmaster position at Waterville, Kansas, and received the same pay and benefits. She continued to perform the same duties, and held the same responsibilities that she had before applying for the Odell Position.

On September 17, 2004, Nelson told plaintiff that she did not get the Odell job because Gonzales said she had "issues" in Waterville. On September 20, 2004, plaintiff asked Gonzales why she did not get the Baileyville position. Gonzales told plaintiff that she sounded upset and plaintiff responded that she wanted to talk about the job in Baileyville before she talked about why she was upset. Gonzales told her she was being disrespectful, and that she did not get the job in Baileyville because she was not as energetic as the person he chose, that he chose the

6

person who answered his questions the best, and that he did not feel like he could give plaintiff

the job when she was already having problems with addressing in Waterville.  Plaintiff then

confronted Gonzales about his negative recommendation, asking why he had "blackballed" her.

Gonzales confirmed that he told Nelson that plaintiff had issues in Waterville and that he could

not recommend her for the Odell Position.  He explained to plaintiff that he gave a negative

recommendation because he had received previous complaints from customers indicating that

plaintiff was "brash."  Plaintiff argued with Gonzales and disputed the specifics he relayed about

issues with customers and other Postmasters.  When plaintiff asked Gonzales about the calls and

letters from people who said she was doing a good job, he told her he had never received any.

Gonzales told plaintiff that if he received one more call from a customer in Waterville, he was

going to bring a disciplinary action against her.

　　　Gonzales testified that he did not make the comments to Nelson or plaintiff due to

plaintiff's gender.  Gonzales never subjected plaintiff to discipline during her tenure at the

Waterville office.

　　　Plaintiff admits that as Postmaster of the Waterville, Kansas Post Office, she had

confrontations with customers prior to her interview for the Odell Position.  Plaintiff admits that

she was short, or "brash" with other another Postmaster regarding endorsements, and that she

apologized to other Postmasters for being brash.  Plaintiff also admits that she apologized to

Gonzales for being brash to customers, by an email sent to him on or about September 24, 2004.

Plaintiff admits that she does not know of any applicants for the Odell Position to whom

Gonzales gave a good recommendation and that Gonzales never disciplined her for the way she

treated customers.  Plaintiff's employment file indicates that for at least the last seven years,

plaintiff has not been subjected to any disciplinary actions.

On or about November 22, 2004, plaintiff filed an Equal Employment Opportunity ("EEO") Complaint alleging that she received a negative employment reference from Gonzales, due to her gender, when she applied for the Odell Position.  This is the only EEO Complaint filed by plaintiff.  In support, plaintiff attached an affidavit setting forth her version of the events leading up to the filing of her charge.  Plaintiff attaches the same affidavit, as well as a subsequent EEO investigative affidavit, as exhibits in support of her response to defendant's motion for summary judgment.

As part of processing plaintiff's EEO Complaint, an EEO investigator sent an "Acceptance of Complaint" to plaintiff on or about January 18, 2005.  The "Acceptance of Complaint" indicated that the scope of investigation would include the following issue: "On September 20, 2004, you became aware that you did not get a good recommendation from your Manager when you applied for the Odell, NE Postmaster position, resulting in your non-selection for the position."  It also indicated that the basis of discrimination was "Sex (Female)." The Acceptance of Complaint also indicated that if plaintiff disagreed with the defined issue, she must provide sufficient reasons to substantiate her objections, in writing, within seven (7) calendar days of receipt of the letter.  Plaintiff did not respond to the Acceptance of Complaint regarding the scope of the issue and investigations because "the information was complete and did not warrant a response per the instructions."

After an investigative report was issued, the USPS moved for Decision Without a Hearing.  On or about March 7, 2006, the EEOC issued its Decision in plaintiff's case.  The decision framed the issue presented as "Whether Complainant was discriminated against on the

basis of sex (female) when on September 20, 2004, she became aware that she did not get a good recommendation from her manager when she applied for the Odell, NE, Postmaster position, resulting in her non-selection for the position." The EEOC ruled that plaintiff had failed to make a prima facie case of discrimination and that the USPS had articulated a legitimate nondiscriminatory reason for its decision. The EEOC specifically found that plaintiff had admitted the accuracy of the USPS's stated reason.

On or about June 4, 2005, plaintiff applied for another level 13 position to become Postmaster at Diller, Nebraska. After plaintiff notified Gonzales that she had applied for the Diller position, Gonzales provided Kerry Kowalski, the selecting officer, with a favorable recommendation regarding plaintiff. Gonzales sent an email to Kowalski that stated:

> Kerry: Brenda has shared that she would like to move closer to home because of her illness. When Jim Nelson was the MPOO, he called and asked for a recommendation. In all honesty, I couldn't give her a good recommendation because of concerns in her office. (She was trying to implement correct addressing with customers and was moving too quick for the community).
>
> Since that time she has made an effort and I couldn't stand in her way to move on. I have not had any issues in her office in over a year and would give her a favorable recommendation.

Plaintiff was selected to fill the Diller Position, and on or about July 23, 2005, she assumed Postmaster duties at that location, where she continues to be employed to date.

## III.   Discussion

### A.   Exhaustion

Defendant asserts that the Court lacks jurisdiction over several of plaintiff's claims

because she has not exhausted administrative remedies.[15]  Specifically, defendant contends that in her Complaint, plaintiff adds allegations of retaliation to the previously asserted gender discrimination claim and asserts claims concerning (1) disciplinary actions; (2) disparate treatment; (3) lost promotions; and (4) general deterioration of the terms, conditions and privileges of plaintiff's employment.[16]  Defendant urges the Court to dismiss all but the disparate treatment claim relating to plaintiff's nonselection for the Odell Position, as she failed to exhaust the other claims in her EEO Complaint.

In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.[17]  The first step to exhaustion is the filing of a charge of discrimination with the EEOC.[18] The second step is to determine the scope of the allegations raised in the EEOC charge because "[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC."[19]  Charges filed with the EEOC are liberally construed to determine whether administrative remedies have been exhausted as to a particular claim.[20]

The Tenth Circuit recently emphasized, however, that

---

[15]Although defendant's previous motion to dismiss was granted to the extent plaintiff's allegations are unrelated to her EEO Complaint and denied to the extent her allegations arise out of her EEO Complaint, the Court was unable to make more specific findings due to plaintiff's omission of any statement of facts in her Complaint (Doc. 19).

[16]Complaint, Doc. 1 at 2.

[17]*Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007) (citing *MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)).

[18]*Id.* (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996)).

[19]*Id.* (citing *MacKenzie*, 414 F.3d at 1274).

[20]*Id.*

> our inquiry is limited to the scope of the administrative
> investigation that can reasonably be expected to follow from the
> discriminatory *acts* alleged in the administrative charge.  In other
> words, the charge must contain facts concerning the discriminatory
> and retaliatory actions underlying each claim; this follows from the
> rule that "each discrete incident" of alleged discrimination or
> retaliation "constitutes its own 'unlawful employment practice' for
> which administrative remedies must be exhausted."[21]

Although plaintiff's Complaint appears to have adopted the broad description of facts included in her EEO Complaint, the Pretrial Order lists two specific and discrete theories of recovery: (1) defendant took adverse job actions against plaintiff in violation of Title VII by discriminating against her based on her gender; and (2) defendant retaliated against plaintiff for filing charges of sex discrimination against defendant through the EEO.[22]  Plaintiff frames the elements of her disparate treatment claim as whether she was denied the appointment to the Odell Position based on her status as a female.[23]  The pretrial order is the controlling document for trial.[24]  Although the Tenth Circuit has recognized that a pretrial order "should be liberally construed to cover any of the legal or factual theories that might be embraced by its language," it has also found, upon a "careful reading of [that] court's cases reviewing trial courts' construction of pretrial orders," that "a district court may more strictly construe a pretrial order when that order has been refined over time, properly drawn, and drafted with substantial specificity."[25]

---

[21]*Id.* (quoting *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

[22]Pretrial Order, Doc. 34 at 6-7.

[23]*Id.* at 7.

[24]Fed. R. Civ. P. 16(a); *Expertise Inc. v. Aetna Fin. Co.*, 810 F.2d 968, 973 (10th Cir. 2002).

[25]*Koch v. Koch Indus.*, 203 F.3d 1202, 1220-21 (10th Cir. 2000) (internal citation omitted).

Claims not included in the pretrial order are waived.[26]

While plaintiff's factual assertions about "de facto" disciplinary actions, lost promotions and general deterioration of the terms, conditions and privileges of her employment are intertwined with her specific claim that she suffered an adverse employment action by not being selected for the Odell Position, they are not presented as discrete incidents of discrimination brought as independent claims against defendant. The Pretrial Order states one disparate treatment claim relating to the Odell Position. It does not set forth a claim regarding the denial of the appointment to the Baileyville position, for an adverse employment action in the form of disciplinary action, or for hostile work environment. Thus, the Court need not decide if plaintiff has exhausted claims that are not before it. Moreover, plaintiff has now withdrawn her claim for retaliation.[27] Accordingly, defendant's motion to dismiss for failure to exhaust is denied as moot.

**B.      Disparate Treatment**

As set forth in the Pretrial Order, plaintiff alleges that she was not selected for the Odell Position because of the negative recommendation given by her supervisor due to her gender. For purposes of summary judgment, the Court applies the familiar *McDonnell Douglas* burden-shifting framework.[28]

> Under this framework, the plaintiff must first establish a prima
> facie case of prohibited employment action. If the plaintiff does

---

[26]*Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002).

[27]Plaintiff's Response, Doc. 39 at 16.

[28]*See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220 (10th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).

so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action.  If the employer satisfies this burden, summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.**29**

### 1.    Prima Facie Case

To succeed on a Title VII claim, plaintiff must show that: (1) she belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances that give rise to an inference of discrimination.[30]  Defendant argues that plaintiff fails to satisfy the second and third prongs regarding her claim.  The Court discusses each in turn.

*Adverse Employment Action*

Defendant argues that plaintiff's claim fails because she has failed to demonstrate that she was subjected to an adverse employment action.[31]  The Tenth Circuit recently reaffirmed that

---

[29]*Id.* (citations and quotations omitted).

[30]*Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir. 2002).  Defendant argues that plaintiff must prove under the third prong that she was treated differently from similarly-situated male employees to satisfy her prima facie case, citing *Trujillo v. Univ. of Colo., Health Sciences Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).  Ordinarily, the third part of the prima facie test will be satisfied by proof that the employer treated similarly situated employees more favorably.  *Hysten*, 296 F.3d at 1181.  The Tenth Circuit stressed in that case, however, that "courts must be sensitive to the myriad of ways such an inference can be created," and that while evidence of more favorable treatment of similarly situated employees can give rise to an inference of gender discrimination to satisfy the third part of the prima facie burden, it is not, in fact an element of a prima facie case.  *Id.* at 1182; *see also Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000).

[31]The Supreme Court most recently addressed the contours of adverse employment actions in *Burlington Northern & Santa Fe Ry. v. White,* 548 U.S. 53 (2006).  In that case, the Court applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII.  *Piercy v. Maketa,* 480 F.3d 1192, 1203 n.12 (10th Cir. 2007).  The Supreme Court, however, made clear that the substantive discrimination provisions of Title VII are limited "to [adverse] actions that affect employment or alter the conditions of the workplace." *Id.* at 1203. Thus, while *Burlington Northern* modified the retaliation standards for adverse actions , it had no similar effect on the Tenth Circuit's discrimination jurisprudence. *Id.*

an adverse employment action includes "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits."[32]  The Circuit continues to liberally define the term "adverse employment action" and takes a case-by-case approach.[33]  An adverse employment action is not limited to such actions to monetary losses in the form of wages or benefits.[34]  Moreover, an adverse employment action may also encompass "those acts that carry a 'significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'"[35]  An adverse employment action does not include "'a mere inconvenience or an alteration of job responsibilities.'"[36]  "Instead, to constitute an adverse action, the employer's conduct must be 'materially adverse' to the employee's status."[37]

Plaintiff argues that Gonzales's failure to recommend her for the Odell Position constitutes an adverse employment action.  Plaintiff asserts that the transfer from Waterville to the Odell Position would have shortened her commute, saved her transportation expenses and caused less stress.[38]  As such, plaintiff contends that she would have benefitted from the

---

[32]*Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (citing *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032-33 (10th Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[33]*Id.* at 1203 (citing *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998)).

[34]*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) (citing *Sanchez*, 164 F.3d at 532).

[35]*Hillig*, 381 F.3d at 1032 (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

[36]*Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1136 (10th Cir. 2005) (quoting *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 857 (10th Cir. 2000)).

[37]*Id.* (quoting *Sanchez*, 164 F.3d at 533).

[38]Although plaintiff has asserted that she suffers from multiple sclerosis, she does not base her claim of discrimination on any alleged disability.

admittedly lateral move, even though it did not include a direct change in her level or compensation.  Plaintiff states that from her point of view as an employee, travel expense and time and stress of travel are considerations to take into account when making decisions regarding an employee's employment status.

Defendant argues that plaintiff's position requires this Court to apply a subjective rather than objective standard in its analysis, contrary to the holding in *Sanchez v. Denver Public Schools*.[39]  In *Sanchez*, the plaintiff was reassigned to a lateral teaching position and later denied a transfer to a lateral position that she viewed as more positive to her personal situation.  The Tenth Circuit found neither the reassignment nor the denial of transfer to be an adverse employment action, but instead a mere inconvenience or alteration of job responsibilities.[40]  The court noted that "[i]f a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action."[41]

Unlike the plaintiff in *Sanchez*, plaintiff in this case was not selected for the lateral Odell Position based, at least in part, on a negative recommendation from her supervisor.  Here, plaintiff claims that Gonzales's decision not to recommend her for the Odell Position was

---

[39]164 F.3d 527, 532-33 (10th Cir. 1998).

[40]*Id*. at 532.

[41]*Id*. at 532 n.5 (citing *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449-50 (11th Cir. 1998) (collecting cases)).

motivated by gender discrimination.  It is this decision that forms the adverse action required.[42]

Because plaintiff's nonselection was based on the negative recommendation given by Gonzales,

the Court concludes that she has made a showing, sufficient to withstand summary judgment,

that she suffered an adverse employment action when she received the negative

recommendation.[43]

### Inference of Gender Discrimination

Plaintiff contends that because she took the initiative to correct a problem about a

returned letter, Gonzales felt like she was challenging him.  Defendant argues that plaintiff

cannot make out the third prong of her prima facie case because she cannot show that she was

treated less favorably than her male counterparts.  Contrary to defendant's assertion, the third

element of a prima facie case does not require comparison with a person outside the protected

class.[44]  Instead, the Court finds that the issue of whether plaintiff was treated differently from

similarly-situated employees is more appropriately analyzed in the pretext stage of the

*McDonnell Douglas* burden-shifting test.[45]  The burden of establishing a case of disparate

---

[42]*See Hillig v. Rumsfeld*, 381 F.3d 1028, 1034 (10th Cir. 2004) (holding that an employee did not need to prove that she would have received prospective job but for employer's negative references in order to establish an adverse employment action); *Dirusso v. Aspen School Dist. No. 1*, 123 F. App'x 826, 832 (10th Cir. 2004).

[43]In her response, plaintiff also claims that her confrontation with Gonzales on September 20, 2004, amounted to "de facto" disciplinary actions that adversely impacted her ability to obtain other Postmaster positions with defendant.  Plaintiff asserts that since Gonzales "lied about her" to Nelson she has been adversely affected in her attempts to gain other Postmaster positions.  While the truth of Gonzales's reasons stated in his negative recommendation to Nelson may certainly be relevant to the issue of pretext, there is no evidence that plaintiff sought or was unable to gain other positions with the USPS.  In fact, as discussed *infra*, Part III. B.3, Gonzales gave plaintiff a positive recommendation for the Diller Postmaster position that she presently holds.

[44]*See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000).

[45]*Id.* at 1229 n.8 (explaining that such evidence can be used as part of a prima facie case, but is not required, and is also appropriately used in assessing whether a plaintiff has shown that the defendant's justification for the discharge was pretextual).

treatment is not onerous.  Thus, for purposes of the instant motion, the Court assumes that plaintiff has satisfied her prima facie case.

### 2.        Legitimate Nondiscriminatory Reason

Defendant asserts that Nelson did not select plaintiff for the Odell Position based on merit and that the negative recommendation from Gonzales was only one factor in his decision. Defendant further asserts that Gonzales's decision not to give plaintiff a positive recommendation was based on previous complaints about the manner in which plaintiff treated customers.  Defendant has met its burden to articulate facially nondiscriminatory reasons for the adverse employment action.

### 3.        Pretext

Under the third step of the *McDonnell Douglas* framework, the burden shifts back to plaintiff to show that defendant's stated reasons are merely a pretext to hide gender discrimination.[46]  Defendant asserts that it is entitled to summary judgment because plaintiff has produced no evidence from which a jury could conclude that the real reason for plaintiff's non-selection for the Odell Position was gender.  The relevant issue is not whether the stated reasons for discrimination were wise, fair or correct, but whether defendant honestly believed in those reasons and acted in good faith.[47]  In examining the issue, a court must "look to the facts as they appear to the person making the decision" regarding the adverse action.[48]  It is not the court's

---

[46]*Id.* at 1230.

[47]*Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

[48]*Kendrick*, 220 F.3d at 1231.

17

role to second guess an employer's business judgment.[49]

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[50] While this burden is not onerous . . . it is also not empty or perfunctory."[51]  A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.[52]  In addition, in the context of a discrimination case, evidence of pretext may include whether plaintiff was treated differently from similarly-situated employees.[53]

Plaintiff asserts that she has shown pretext because Gonzales falsely told Nelson that she had "issues" in Waterville about customer relations.  Plaintiff argues that unless defendant can show the "issues" were true statements, then it follows that the reasons for not selecting plaintiff for the Odell Position were pretextual.  Gonzales told plaintiff that he gave her a negative recommendation because he had received previous complaints from customers indicating she

---

[49]*Stover*, 382 F.3d at 1076.

[50]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

[51]*Id*. at 1323-24.

[52]*Kendrick*, 220 F.3d at 1230.

[53]*See Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 n.6 (10th Cir. 2000).

was "brash."  While plaintiff admitted that she did in fact have such confrontations, she adamantly denies that she continued to have "issues" at Waterville at the time Gonzales made his negative recommendation to Nelson.  While plaintiff may disagree with Gonzales's statement, the question is not whether the reasons for his negative recommendation to Nelson were correct, but whether he honestly believed in those reasons and acted in good faith.[54]  Plaintiff has provided no admissible evidence, other than her subjective beliefs, that proves Gonzales acted otherwise.  Plaintiff's affidavit suggests multiple reasons why Gonzales would lie to Nelson, including plaintiff's gender.  Absent specific supporting facts for plaintiff's opinion, however, no reasonable jury could conclude that gender was a motivating factor in Gonzales's negative recommendation.  Plaintiff cannot overcome a motion for summary judgment by simply stating that Gonzales is a liar without specific facts on which a reasonable jury could draw such a conclusion.[55]

Plaintiff also asserts that she has presented evidence that Gonzales had an "established pattern of treating assertive females unfavorably, ultimately resulting in a move of location for him after it was determined that a hostile work environment existed at his former post." As explained above, Rule 56 requires that plaintiff set forth specific facts showing a genuine issue for trial.  Plaintiff cannot satisfy this standard by her conclusory opinion that Gonzales had a problem with women.[56]  Plaintiff has not provided specific facts—such as the total number of male and female employees at the Waterville or Topeka postoffice where Gonzales was

---

[54]*Stover*,  382 F.3d at 1076.

[55]*See Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005).

[56]*Id.*

supervisor, the specifics of the "hostile work environment" at his former post and whether Gonzales gave male employees favorable treatment—which are necessary for a jury to draw any inference from Gonzales's treatment of plaintiff.[57]  Plaintiff's conclusory opinion of the underlying reason for Gonzales's conduct is unsupported.

Finally, the Court notes that plaintiff's claim of pretext is belied by events that occurred after plaintiff applied for the Odell Position.  After she was not selected for the Odell Position, plaintiff applied for another position in Diller, Nebraska.  Gonzales provided the selecting officer for that position with a favorable recommendation regarding plaintiff, noting the improvement in her performance and in her relations with her customers.

Based on this record, no reasonable jury could find that defendant's stated reasons for the negative recommendation for the Odell Position are a pretext for gender discrimination.  Accordingly, the Court grants defendant's motion for summary judgment on this claim.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. 35) is GRANTED; defendant's motion to dismiss for failure to exhaust is DENIED as moot.

IT IS SO ORDERED.

Dated this 12th day of February 2008.

 S/   Julie A. Robinson
Julie A. Robinson
United States District Judge

---

[57]*Id*.  Defendant also points out that plaintiff cannot explain how Nelson could have been motivated by discriminatory animus by not selecting plaintiff, when he chose Phillips, who is also female.

20